JEFFREY S. BLANCK, ESQ.
Nevada State Bar # 3913
485 West Fifth Street
Reno, Nevada 89503
(775) 324-6640
(775) 323-5944 fax
email: jblanck@jeffreyblancklaw.com
Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JIM BASS HOLDEN, | **Case No.: 2:14-cv-00894-APG-PAL** |
| Petitioner, | **FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. §2254** |
| v. | |
| RENEE BAKER, Warden, ELY STATE PRISON; and ATTORNEY GENERAL OF THE STATE OF NEVADA, | |
| Respondents. | |
| _____/ | |

Petitioner, JIM BASS HOLDEN ("Holden"), by and through his appointed CJA

counsel of record, JEFFREY S. BLANCK, files this First Amended Petition for Writ of

Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. §2254.


Dated: October 29, 2014                    _____s/_____
                                           JEFFREY S. BLANCK, ESQ.,
                                           Attorney for Petitioner

I.

PROCEDURAL BACKGROUND

1.      After his jury trial, Holden was found guilty of: Count I, Burglary While in Possession of a Firearm; Count II, Conspiracy to Commit Murder; Count III, Extortionate Collection of Debt; and Count IV, Murder With use of a Deadly Weapon.

2.      On June 16, 2006, the clerk of the Eighth Judicial District Court of Clark County, Nevada entered a Judgment of Conviction in the case entitled, <u>State of Nevada vs. Jim Bass Holden #2515224</u>, Case No. 04C200945 (Exhibit 1).

3.      At Holden's sentencing hearing, the Court sentenced Holden as follows: Count I, 24-120 months; Count II, 24-120 months and Count II to run concurrent with Count I; Count III, 12-24 months and to run concurrent with Counts I and II; and Count IV, life w/o and an equal and consecutive life w/o which is concurrent with Counts I, II, and III; the sentence in Count IV is to run consecutive to the sentences in Case C202943 and Case 214716 (Exhibit 2, pg. 12).  Holden is currently serving out his sentence at Ely State Prison.

**JUSTICE COURT PROCEEDINGS**

4.      On March 30, 2004, Holden was arrested for Murder - With a Deadly Weapon and Burglary - Use of a Deadly Weapon.

5.      A Criminal Complaint was filed in the Justice Court, North Las Vegas Township, charging Holden with Count I, Murder With use of a Deadly Weapon and Count II, Burglary While in Possession of a Firearm.  On April 21, 2004, the State filed additional charges in an Amended Criminal Complaint, charging Holden with additional counts for Conspiracy to Commit Murder and Extortionate Collection of Debt (Exhibit 3).

6.      At the preliminary hearing on April 26, 2004, Holden was present with his appointed trial counsel, Bret O. Whipple ("Defense Counsel" sometimes also referred to herein as "Appellate Counsel"), appearing before the Honorable Natalie L. Tyrell.  After the testimony of a witness, Vanessa Pena, and Holden waiving his right to testify at the

hearing, Judge Tyrrell found that there was slight or marginal evidence in the matter to bind Holden over for trial.  Trial was set for May 10, 2004 at 9:00 a.m.  (Exhibit 4: Preliminary Hearing Transcript, Pg. 58).

### DISTRICT COURT PROCEEDINGS

7.      An Information was filed on April 28, 2004, charging Holden with the crimes of Conspiracy to Commit Murder (Felony - NRS 199.480, 200.010, and 200.030); Burglary While in Possession of a Firearm (Felony - NRS 205.060 and 193.165); Extortionate Collection of Debt (Felony - NRS 205.322); and Murder With use of a Deadly Weapon (Felony - NRS 200.020, 200.030, and 193.165) (Exhibit 5).

8.      Holden was arraigned on May 11, 2004 before the Honorable John S. McGroarty in the Eighth Judicial District Court, Clark County, Nevada.  Holden waived his right to a speedy trial, and his trial was set for December 6, 2004 at 10:00 a.m. (Exhibit 6: Arraignment Transcript, Pgs. 4-5).

9.      On June 21, 2004, the State filed its Motion to Compel Handwriting Exemplars for Holden and argued that there would be no violation of Holden's Fifth Amendment right of self-incrimination.  Defense counsel did not file an opposition to the motion, and requested the court to continue the hearing on the motion for 30 days. The court granted the motion, and it was continued to September 9, 2004.  On that day, defense counsel advised the court that the handwriting exemplars from Holden were submitted the week prior.

10.     A jury trial was set for December 6, 2004.  On November 15, 2004, Defense Counsel filed a Motion for Continuance of Trial informing the court that in addition to this trial to commence on December 6, 2004, Defense Counsel had two other trials set for January 2005.  In February 2005, the State moved for a continuance of the trial date, and the jury trial was then scheduled for November 14, 2005.  In October 2005, Defense Counsel moved the court for another continuance of Holden's trial date.  The State opposed the motion, and the court tentatively continued the trial date to a future date which would be set at Calendar Call on November 9, 2005.

11.    The November 9, 2005 calendar call was heard and Holden was present in accordance with the court's order.  The State informed the court that the witness, Vanessa Peña ("Peña"), was unable to be located and that they should just set a new trial date.  The court set the new trial date for May 8, 2006.

12.    On April 21, 2006, the State filed a Motion in Limine re: Defendant's Journal ("journal") (Exhibit 7) seeking only to have a pre-trial ruling on the journal entries regarding the Civic Center homicide and any journal entries referencing the White Cap homicide would be redacted (pg. 4).  The State argued that the journal entries relating to the crime itself are admissible under NRS 48.035, but sought from the court a review on the admissibility of the evidence in the journal which relates to threats against various witnesses in the case, whether or not there would be undue prejudice, and relevancy issues in accordance with NRS 48.045(2).  The State had to establish (1) the prior act is relevant to the crime charged, (2) the act is proven by clear and convincing evidence, and (3) the evidence is more probative than prejudicial.  Cipriano v. State, 111 Nev. 534, 541; 894 P.2d 347, 352 (1995).   The State also sought to have the jury hear that Holden referenced almost all of the witnesses/co-defendants in his journal even if they were not able to hear the context (pg. 5).

13.    Also on April 21, 2006, the State filed a Motion to Admit Preliminary Hearing Testimony of Vanessa Peña at the time of trial (Exhibit 8).  Ms. Peña had been a difficult witness to subpoena to various court appearances.  The State was going to make every effort to locate and command Ms. Peña's appearance at trial, but wanted to put Holden on notice of the possibility that the State would need to use her preliminary hearing testimony at trial if their efforts to locate and have Ms. Peña present at trial were not successful.

14.    Defense Counsel filed Defendant's Opposition to State's Motion in Limine Re: Defendant's Journal (Exhibit 9) on May 1, 2006, Defense Counsel argued that the State could only admit the parts of the journal highlighted in red (their case in chief) and the parts of the journal entries highlighted in blue (for impeachment purposes).

Defense counsel also argued that any attempt to introduce Holden's alleged journal under NRS 48.045(2) as a "consciousness of guilt" exception is not supported by law. Pursuant to <u>Bellon v. Nevada</u>, 117 P.3d 176 (2005) the defendant's threats were not sufficient to demonstrate "consciousness of guilt" but merely reflective of the defendant's frustration. Defense Counsel's claimed that the journal entries were related to his frustration and not as a consciousness of guilt. Before any bad acts can be admitted (including threats), a hearing pursuant to NRS 48.045(2) must be concluded.

15.    Defense Counsel filed his Opposition to State's Motion to Admit Preliminary Hearing Testimony of Vanessa Peña on May 1, 2006 (Exhibit 10). Defense counsel argued that before the court could allow any preliminary testimony of Ms. Peña to be read into the record, the State must provide an outline and affidavits as to what work and attempts were made to secure Ms. Peña's attendance at Holden's trial.

16.    At the May 3, 2006 hearing on all pending motions (Exhibit 11: Transcript of hearing), the court first addressed Defense Counsel's Motion in Limine regarding hearsay evidence and after arguments, the court ruled that it would allow the testimony of the witness, Vanessa Peña, to come in (pg. 8). Also, the court did not consider the hearsay statement regarding the skull tattoos inappropriate evidence and denied Defense Counsel a Petrocelli hearing (pgs. 10 & 11).

The next motion the court heard was the issue of the admissibility of Holden's prior convictions (pg. 11). The court ruled that Holden's prior convictions are relevant to his credibility, unfair prejudice does not outweigh probative value, and the court denied Defense Counsel's Motion in Limine to preclude Holden's prior convictions (pg. 21).

The next motion the court heard was the Motion in Limine to preclude references to the Deceased as a "victim." The court did not believe referring to the Deceased as a "victim" was prejudicial unless Defense Counsel was going to assert that a crime was not committed, therefore, the court denied this motion (pg. 22).

///

1    The next motion up for discussion was the motion to exclude the journal
2    (pg. 23).  The State informed the court that the journal entries highlighted in red was
3    evidence regarding his case in chief; the entries highlighted in blue would be admitted
4    as evidence in the event Holden took the stand; and the remaining entries in black were
5    to be redacted out.  The parties went through the journal date by date to determine
6    whether or not a particular part is admissible or prejudicial and the court ruled on that
7    particular journal entry.

8    The final issue for discussion was Defense Counsel's Motion to Suppress
9    Admissions and Request for an Evidentiary Hearing on an Order Shortening Time (pg.
10   66).  The court denied this motion (pg. 82).   The State then introduced an Amended
11   Information which included a revised definition on the conspiracy charge.

12   17.    On May 8, 2006, an Amended Information was filed with the court in this
13   case (Exhibit 12).  In Counts 3 and 4, the State added the wording "with the specific
14   intent the crime occur,..." in Count 3, after the wording "the Defendant aiding and
15   abetting JERRY SALAS in the commission of the crime,..." and in Count 4 after the
16   wording in (3) "by aiding and abetting in the commission of the crime,...," and after the
17   wording in (4) "...conspiring with each other to commit murder...," and the deletion of
18   the remaining portion of Count 4 after the end of (4) ending in "in furtherance of the
19   conspiracy in its commission; "

20   18.    The jury trial commenced on May 8, 2006 and continued through May 11,
21   2006, before the Honorable David T. Wall.  Holden was present throughout the trial and
22   was represented by his attorney, Bret Whipple.

23   19.    On May 11, 2006, the jury found Holden guilty on all four counts (Exhibit
24   13 - Verdict).

25   20.    On May 12, 2006, the State filed a Second Amended Information (Exhibit
26   14).  This amendment changed Count 1 to remove the wording "and/or robbery" after
27   "intent to commit larceny"; and Count 4, in (2) to add the words "kidnapping and/or"
28   before the word "burglary" and after the word "burglary," the words "and/or robbery"

1  to read as follows: "(2) the killing occurring during the perpetration or attempted

2  perpetration of a kidnapping and/or burglary and/or robbery; and/or (3)..."

3      21.    On June 2, 2006, Defense Counsel filed Defendant's Sentencing

4  Memorandum in support of arguments to be made at Holden's sentencing hearing

5  scheduled for June 5, 2006.

6      22.    The sentencing hearing took place on June 6, 2006.  The sentence Holden

7  received is set forth in Paragraph 1 on Page 2 hereinabove.

8      23.    The Judgment of Conviction was filed in this case on June 16, 2006 (Exhibit

9  1).

10  **DIRECT APPEAL**

11      24.    Holden's Notice of Appeal and Case Appeal Statement were filed on July

12  14, 2006.  The Nevada Supreme Court docketed this appeal as Case No. 47698 (Exhibit

13  15 - Docket Sheet).

14      25.    Appellant's Opening Brief was filed on May 31, 2007 (Exhibit 16).

15  Attorney Bret Whipple raised the following arguments on behalf of Appellant:

16       I.     APPELLANT'S DUE PROCESS RIGHT UNDER THE 14TH

17            AMENDMENT WAS VIOLATED WHEN THE PROSECUTION
          CHARACTERIZED THE DECEASED AS A "VICTIM"

18       II.    APPELLANT'S RIGHT TO PRESENT A DEFENSE UNDER THE 6TH

19            AMENDMENT WAS VIOLATED WHEN THE COURT DID NOT
          ALLOW APPELLANT'S EXPERT WITNESS TO TESTIFY AT TRIAL.

20       III.   APPELLANT'S DUE PROCESS RIGHT UNDER THE 14TH

21            AMENDMENT WAS VIOLATED WHEN THE COURT TOOK
          JUDICIAL NOTICE OF A WITNESS'S PRIOR "IN COURT"

22            IDENTIFICATION OF A CO-CONSPIRATOR.

23       IV.   APPELLANT'S DUE PROCESS RIGHT UNDER THE 14TH
          AMENDMENT WAS VIOLATED WHEN THE COURT ALLOWED

24            TESTIMONY OF WITNESS DR. OLSON WITHOUT PROPER
          FOUNDATION.

25      26.    The Nevada Supreme Court filed its Order of Affirmance on October 17,

26  2007 (Exhibit 17) and Remittitur issued on November 13, 2007.

27  ///

28  ///

1      **POST-CONVICTION LITIGATION**

2           27.    Holden, pro se, filed a Petition for Writ of Habeas Corpus (Post

3    Conviction) on August 23, 2008 (Exhibit 18).  Holden raised the following claims:

4           I.      DENIAL OF THE EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT
                    APPEAL AS OF RIGHT VIOLATING THE 6TH AND 14TH AMENDMENTS OF
5                   THE U.S. CONSTITUTION

6           II.     VIOLATION OF THE 6TH AND 14TH AMENDMENTS TO THE U.S.
                    CONSTITUTION DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL AT
7                   TRIAL RESULTING IN SEVERAL VIOLATIONS OF A FAIR TRIAL AND
                    EFFECTIVE COUNSEL
8
9           III.    VIOLATION OF THE 6TH AND 14TH AMENDMENTS TO THE U.S.
                    CONSTITUTION DENYING HOLDEN HIS RIGHT TO A FAIR TRIAL,
                    EFFECTIVE ASSISTANCE OF COUNSEL, AND DUE PROCESS DUE TO
10                  PROSECUTORIAL MISCONDUCT.

11          IV.     DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL, AND PRE-
                    TRIAL, BY COUNSEL WHIPPLE'S FAILURE TO PERSONALLY INVESTIGATE
12                  THE CRIME, FACTS, AND PETITIONER HOLDEN, FOR PRESENTATION OF
                    DEFENSE.
13
14          V.      DEFENSE COUNSEL AND STATE PROSECUTORS VIOLATED HOLDEN'S
                    CONSTITUTIONAL RIGHT TO CONFRONTATION OF STATE SHADOW
                    WITNESS STEVEN HALL IN DENIAL OF RIGHTS UNDER 6TH AND 14TH
15                  AMENDMENTS.

16          VI.     THE DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT
                    APPEAL BY COUNSEL'S FAILURE TO RAISE DENIAL OF SUPPRESSION OF
17                  THE JOURNAL AND INTERROGATION EVIDENCE , DENIAL OF 6TH AND
                    14TH AMENDMENTS.
18
19          VII.    PETITIONER HOLDEN WAS DENIED HIS 6TH AND 14TH AMENDMENT
                    RIGHTS BY THE STATE'S USE OF THE ILLEGAL JURY INSTRUCTION
                    DEFINING FIRST DEGREE MURDER.
20
21          VIII.   THE CUMULATIVE TRIAL ERRORS, CUMULATIVE ATTORNEY ERRORS
                    AND CUMULATIVE STATE PROSECUTORIAL MISCONDUCT DEPRIVED
                    HOLDEN OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO
22                  THE U.S. CONSTITUTION.

23          28.    October 23, 2008, the State filed its response to Petitioner's Petition.  On

24    November 25, 2008, the court appointed counsel for Appellant, Karen Connolly

25    ("Appointed Counsel").  On April 9, 2010, Petitioner's Appointed Counsel filed a

26    Supplement to Post-Conviction Petition for Writ of Habeas Corpus (Exhibit 19), adding

27    additional claims as follows:

28    ///

A.   TRIAL COUNSEL WAS INEFFECTIVE IN ADVISING HOLDEN TO TESTIFY, WHICH WOULD ALLOW HIS PRIOR CONVICTIONS TO BE ADMITTED AS IMPEACHMENT, AND IN KEEPING WITH THIS STRATEGY EVEN AFTER THE STATE RESTED WITHOUT INTRODUCING THE CONTENTS OF HOLDEN'S "JOURNAL."

B.   TRIAL COUNSEL WAS INEFFECTIVE IN HANDLING THE PRIOR CONVICTION ISSUE AND BURDENED HOLDEN'S RIGHT TO APPEAR BEFORE THE JURY AS AN INNOCENT MAN VERSUS AN INMATE.

C.   TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A LIMITING INSTRUCTION PRIOR TO INTRODUCTION OF THE JOURNAL'S OTHER BAD EVIDENCE AND APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO PROPERLY RAISE THE ISSUE THAT THE DISTRICT COURT ERRED IN ADMISSION THE JOURNAL'S BAD ACT EVIDENCE.

D.   TRIAL COUNSEL WAS INEFFECTIVE IN CONCEDING HIS CLIENT'S POSSIBLE GUILT DURING JURY SELECTION AND AGAIN DURING CLOSING ARGUMENT.

E.   TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST INSTRUCTIONS CONSISTENT WITH HIS THEORY OF DEFENSE AND IN FAILING TO OBJECT DURING THE STATE'S CLOSING ARGUMENT WHEN THE STATE MISCHARACTERIZED THE LAW AND THEREBY CONFUSED THE MEANING OF THE JURY INSTRUCTIONS AND LESSENED THE BURDEN OF PROOF REQUIRED TO CONVICT, AND APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE ISSUE OF THE STATE'S IMPROPER ARGUMENT ON APPEAL.

F.   APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE ISSUE OF INADMISSBLE HEARSAY BEING ADMITTED AGAINST HOLDEN IN VIOLATION OF BRUTON AND THE 6TH AMENDMENT.

G.   TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS, AND APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS ISSUE OF PROSECUTORIAL MISCONDUCT ON APPEAL.

H.   TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PREPARE FOR TRIAL BY INVESTIGATING AND FULLY RAISING THE ISSUE OF WHETHER HOLDEN'S STATEMENT TO POLICE SHOULD BE SUPPRESSED FOR A MIRANDA VIOLATION, AND APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE ISSUE ON APPEAL.

I.   COUNSEL WAS INEFFECTIVE IN FAILING TO PRESENT EXPERT AND LAY TESTIMONY TO CHALLENGE THE RELIABILITY OF THE HOLDEN'S STATEMENTS MADE DURING THE POLICE INTERROGATION.

J.    THE COMBINED DERELICTIONS BY TRIAL COUNSEL, AS WELL AS THE COMBINED DERELICTIONS OF APPELLATE COUNSEL WARRANT RELIEF.

29.   The State filed its Response to Defendant's Petition for Writ of Habeas Corpus (Post-Conviction) on June 29, 2010.  The court set oral argument on whether or

1  not to conduct an evidentiary hearing on October 6, 2010.  The evidentiary hearing was

2  set for February 28, 2011.  Throughout most of 2011, there were various continuances of

3  the evidentiary hearing by the parties.  On October 17, 2011, the court set a status check

4  for resetting the evidentiary hearing for October 24, 2011.  Thereafter, on October 24,

5  2011, the court ordered that a "trial date" be set in this matter.  On April 13, 2012, the

6  evidentiary hearing was held and the court denied Petitioner's Petition, and the court

7  filed its Findings of Fact, Conclusions of Law and Order on May 6, 2013 (Exhibit 20).

8      30.    Appointed Counsel filed Appellant's Notice of Appeal on July 25, 2012

9  and the Case Appeal Statement on July 26, 2012 (Nevada Supreme Court Case No.

10  61362) (Exhibit 21 - Docket Sheet).  Holden's opening brief was filed on February 27,

11  2013 (Exhibit 22), the answering brief was filed on March 29, 2013, and the reply brief on

12  April 30, 2013.  The Nevada Supreme Court issued its Order of Affirmance on May 13,

13  2014 (Exhibit 23), and Remittitur issued on June 11, 2014.

14      31.    While a decision on Holden's appeal from the denial of his state Petition

15  for Writ of Habeas Corpus (Nevada Supreme Court Case No. 61362) was still pending,

16  Holden filed a second Petition for Writ of Habeas Corpus with the 8th Judicial District

17  Court on April 26, 2013 (Exhibit 24).  Holden raised a new ground based on new case

18  law regarding plea negotiations and defense counsel's duty to disclose all formal plea

19  offers from the prosecution.  Defense Counsel did not disclose the prosecution's offer of

20  a plea to Holden which the State claims it was given in Holden's Case No. 04C202943.

21  In Case No. 04C202943, Holden was convicted of Murder with the use of a Deadly

22  Weapon (Count I), Attempted Murder with the use of a Deadly Weapon (Count II),

23  Conspiracy to Commit Murder (Count III), and First Degree Kidnaping with use of a

24  Deadly Weapon (Counts IV and V) ("companion case"). The State's plea offer included

25  both cases, the companion case and this case, C200945).

26      32.    On July 24, 2013, the State filed its Renewed Response and Motion to

27  Dismiss Defendant's Petition for Writ of Habeas Corpus (Post-Conviction) in Light of

28  Evidence Produced at Companion Case Evidentiary Hearing (Exhibit 25).  At the Status

Check Hearing on July 31, 2013, the court ordered a briefing schedule:  Holden's supplemental brief was due on or before October 30, 2013, State's response due on or before January 6, 2014, and Holden's reply due on or before January 21, 2014, and the matter set for argument on January 29, 2014.  Appointed Counsel filed her Reply to State's  Renewed Response and Motion to Dismiss Defendant's Petition for Writ of Habeas Corpus (Post-Conviction) in Light of Evidence Produced at Companion Case Evidentiary Hearing on September 25, 2013 (Exhibit 26).  An evidentiary hearing was held on January 29, 2014; the court granted the State's Motion to Dismiss (Exhibit 27).  On March 28, 2014, Holden's Notice of Appeal and Case Appeal Statement were filed with the Nevada Supreme Court (Case No. 65331) (Exhibit 28 - Docket Sheet).

33.     On April 22, 2014, a docketing statement was filed by Appointed Counsel in Nevada Supreme Court Case No. 65331 (Exhibit 29).  The parties filed a Stipulation to Extend Briefing Schedule on August 15, 2014, and the court filed its Order granting the extension on August 22, 2014.  Appointed Counsel filed a Motion to Consolidate or for Related Relief and a Request for Extension to File Opening Brief on September 19, 2014.  The Nevada Supreme Court filed its Order denying the Motion to Consolidate or for Related Relief but granted Appellant's Request for Extension of Time to File Opening Brief on October 3, 2014.  As of this date, briefs have not been filed in this case.

34.     On June 11, 2014, Holden filed a third Petition for Writ of Habeas Corpus in the 8th Judicial District Court in Case No. 04C200945 (Exhibit 30).  The sole ground for this petition is a new ruling by the United States Supreme Court stating that "forensic reports that certify incriminating test results are testimonial in nature and that their admission into evidence is a violation of the confrontation clause."  The court also stated that "The accused's right is to be confronted with the analyst who made the certification."  On July 18, 2014, the State filed its Response and Motion to Dismiss Defendant's Pro Per Petition for Writ of Habeas Corpus and Opposition to Defendant's Pro Per Motion to Appoint Counsel.

///

35.     On August 13, 2014 at the hearing on the State's motion, the court ruled that Holden's Motion for Appointment of Counsel is granted for the limited purpose of addressing any new grounds in the successive petition, and the remaining motions were continued (Exhibit 31).  Appointed Counsel, Karen Connolly withdrew as counsel of record on August 6, 2014.  On August 20, 2014 at a status check hearing, the court appointed Holden new counsel, Kristina Wildeveld ("New Appointed Counsel").

36.     Holden's New Appointed Counsel filed a supplemental to his Petition for Writ of Habeas Corpus on October 1, 2014.  On October 3, 2014 (Exhibit 32), the court set a briefing schedule, and an evidentiary hearing is set for February 28, 2015.  This matter is still pending.

II.

INTRODUCTION

On August 26, 2014, this Court appointed CJA Counsel, JEFFREY S. BLANCK ("CJA Counsel"), to represent Holden in this matter.  In its order, the Court advised CJA Counsel of Petitioner's deadline to file any known claims prior to the expiration of the federal limitation period of October 30, 2014 (Docket #12).

At the time CJA Counsel was appointed to represent Holden, CJA Counsel was not provided with any of Holden's criminal records.  CJA Counsel contacted the Federal Public Defender's office to obtain a copy of Holden's criminal case records, and the Federal Public Defender's office informed CJA Counsel they did not have those records.  CJA Counsel was able to obtain a copy of Holden's criminal records from the U.S. District Court in Reno, but did not receive the records until the end of September.

CJA Counsel has filed concurrently with this First Amended Petition for Writ of Habeas Corpus, a Request for Leave to File a Second Amended Petition and Request for Extension of Time to File a Second Amended Petition, and a Motion for Stay and Abeyance.  The Second Amended Petition will supplement the legal arguments for the claims raised at the state court level, raise any potential new claims or other relief, and the Motion for Stay and Abeyance will stay this proceeding to allow for the exhaustion

1  of the unexhausted state claims currently pending in the Nevada Supreme Court and 8th

2  Judicial District Court proceedings.

3       In a recent federal district court case, the Court found that "claims raised in

4  documents" like these exhibits should be construed "as claims in a [§2254] action."

5  Cisneros v. Baker, 3:13-cv-00033-LRH-VPC (Clerk's Record 5; March 7, 2013, Order

6  Appointing the Federal Public Defender as counsel).

7       Holden's case is complex and the plea negotiation claim filed in Holden's second

8  Petition for Writ of Habeas Corpus in the 8th Judicial District Court on April 26, 2013

9  (Exhibit 32) is still pending in the Nevada Supreme Court (Case No. 65331) (Exhibit 36).

10       Holden also filed a third Petition for Writ of Habeas on June 11, 2014 in the 8th

11  Judicial District Court (Exhibit 38) making a claim on a new ground after learning of a

12  U.S. Supreme Court ruling that it is a violation of the confrontation clause if a forensic

13  report is used as evidence against a defendant and the drafter of the report is not the

14  individual who is testifying at trial regarding such evidence.  The 3rd Petition is

15  currently pending in the 8th Judicial District Court, and an evidentiary hearing is

16  currently set for February 28, 2015.

17       CJA Counsel has included as exhibits to this First Amended Petition the state

18  post-conviction and state appellate records.  These exhibits serve to set forth the

19  violations/errors claimed, and CJA Counsel has summarized all of these claims in this

20  First Amended Petition.

21  III.

22  GROUNDS FOR RELIEF - DIRECT APPEAL

23  (Holden's Opening Brief - Exhibit 24)

24  A.   APPELLANT'S DUE PROCESS RIGHT, UNDER THE 14TH AMENDMENT, WAS
   VIOLATED WHEN THE PROSECUTION CHARACTERIZED THE DECEASED

25      AS A "VICTIM."  (pg. 10)

26       Throughout the trial, the prosecution referred to the deceased, Gerardo Garcia

27  ("Deceased") as the "victim."  Appellate Counsel (who was also trial counsel) argued

28  that because the prosecution's continuous referral to the Deceased as the "victim,"

13

1  eroded the presumption of Holden's innocence and the denial of a fair trial.  Citing,

2  Norris v. Risley, 918 F.2d 828, 831 (9th Cir. 1990).

3  B.  APPELLANT'S RIGHT TO PRESENT A DEFENSE, UNDER THE 6TH
    AMENDMENT, WAS VIOLATED WHEN THE COURT DID NOT ALLOW
4  APPELLANT'S EXPERT WITNESS TO TESTIFY AT TRIAL.  (pg. 12)

5      Appellate counsel argued that the Nevada Supreme Court has liberally allowed a

6  defendant the right to present any defense within the bounds of jurisprudence that

7  would tend to prove his innocense.  In Cosio v. Nevada, 106 Nev. 327 (1990), as part of

8  his defense, the defendant attempted to have his immigration attorney testify to the fact

9  that the defendant relied on his attorney's advice and that he did not intentionally

10  commit perjury.  The State filed a motion in limine to preclude the attorney's testimony

11  and the court granted the State's motion.  On appeal, the Nevada Supreme Court

12  reversed the state district court's holding stating "[t]he due process clauses of the

13  constitutions guarantee a defendant 'the right to introduce evidence any testimony or

14  documentation which would tend to prove the defendant's theory of the case.'"  Id. at

15  330.

16      Holden testified at trial that his confession to law enforcement was a lie to protect

17  his family from the two Hispanic perpetrators.  The defense requested the opportunity

18  to call Dr. Deborah Davis as an expert in the field of false confessions.  The court

19  erroneously denied Holden's request to have Dr. Davis testify as an expert in false

20  confessions, all to the prejudice of Holden.

21  C.  APPELLANT'S DUE PROCESS RIGHT UNDER THE 14TH AMENDMENT WAS
    VIOLATED WHEN THE COURT TOOK JUDICIAL NOTICE OF A WITNESS'S
22  PRIOR "IN COURT" IDENTIFICATION OF A CO-CONSPIRATOR.  (pg. 15)

23      Vanessa Peña testified at trial as the only eye witness in this matter.  Ms. Peña

24  testified that she was present when the shooting occurred and later that same evening

25  identified a co-conspirator, Jerry Salas ("Salas"), only by hearing his voice.  The lower

26  court took judicial notice of Ms. Peña's in-court identification of Salas.

27      Appellate Counsel cited Occhiuto v. Occhiuto, 97 Nev. 143, 145 (1981), stating

28  that the court held "[i]t is a general rule that courts should not take judicial notice of

1   their records in another and different case."  Appellate counsel argues that the lower

2   court denied Holden of his 14th Amendment right to challenge Ms. Peña's identification

3   of the co-conspirator, Salas, based upon her memory and any potential bias.

4   D.   APPELLANT'S DUE PROCESS RIGHT UNDER THE 14TH AMENDMENT WAS
       VIOLATED WHEN THE COURT ALLOWED TESTIMONY OF WITNESS DR.

5       OLSON WITHOUT PROPER FOUNDATION.  (pg. 16)

6       An element of all homicides is the cause and manner of death of the deceased.  In

7   this case, in lieu of the testimony of the medical examiner who performed the autopsy,

8   the State called as a witness a medical examiner who was employed with the Clark

9   County Coroner's Office but did not perform the Deceased's autopsy.

10      Appellate counsel cites to NRS 51.135, which states:

11          "A [r]eport, record, or compilation of data. . . opinions or
            diagnoses, made at or near the time by, or from information

12          transmitted by, a person with knowledge, all in the course of
            regularly conducted activity. . .is not inadmissible under the

13          hearsay rule. . . "

14      During her testimony, Dr. Alane Olson did not discuss the business practices of

15  the Clark County Medical Examiner's Office other than to state that the autopsy was

16  documented through a hand-held Dictaphone and that she referred to the other

17  doctor's report.  The court must reverse Dr. Olson's testimony based upon insufficient

18  foundation of Dr. Olson.  Hamm v. Sheriff, 90 Nev. 253, 254 (1974) cited by Appellate

19  Counsel.

20                                      IV.

21              GROUNDS FOR RELIEF - POST CONVICTION APPEAL

22                  (Holden's Opening Brief - Exhibit 30)

23          THE DISTRICT COURT ERRED IN DENYING HOLDEN'S
               PETITION FOR WRIT OF HABEAS CORPUS (pg. 18)

24

25      The state district court erred in denying Holden's first petition for writ of habeas

26  corpus.  Holden's judgment of conviction from the trial and affirmation of the judgment

27  of conviction on direct appeal were the result of ineffective assistance of counsel in

28  violation of Holden's 5th, 6th, and 14th Amendments rights to due process, right to

1    effective counsel, and to present a defense and the corresponding rights under the

2    Nevada Constitution, Article 1, Section 8.

3        To prevail on a claim of ineffective assistance of counsel, the defendant must pass

4    the two-prong test in <u>Strickland v. Washington</u>, 466 U.S. 688, 697; 104 S.Ct. 2052.  A

5    defendant is entitled to relief where "counsel's errors were so serious as to deprive the

6    defendant of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 687, 104

7    S.Ct. at 2064.

8        Additionally, the petitioner is entitled to a post-conviction evidentiary hearing

9    when he asserts claims supported by specific factual allegations not belied by the record

10   that, if true, would entitle him to relief, <u>McConnell v. State</u>, 125 Nev. 243, 246; 212 P.3d

11   307, 313 (2009).

12       A petitioner must demonstrate the disputed factual allegations underlying his

13   ineffective assistance claim by a preponderance of the evidence, <u>Hernandez v. State</u>, 124

14   Nev. 639; 194 P.3d 1235, 1241 (2008) (<i>citing <u>Means v. State</u>, 120 Nev. 1001, 1012; 103 P.3d</i>

15   <i>25, 33 (2004))</i>.

16

17   **A.**   **<u>Trial Counsel was Ineffective in Advising Holden to Testify, Which Would</u>**
     **<u>Allow his Prior Convictions to be Admitted as Impeachment, and in Keeping</u>**
18   **<u>With This Strategy, Even After the State Rested Without Introducing the</u>**
     **<u>Contents of Holden's "Journal."</u>**  (pg. 19)

19       Trial counsel informed the jury in his opening statement that Holden would

20   testify and inform the jury of his prior convictions, including one for a previous murder

21   (Holden's companion case).  In an attempt to justify his reasons, trial counsel stated that

22   he might have wanted to take the sting out of Holden's prior convictions.  Trial counsel

23   stated that he also wanted to "win the opening," but offered no insight on how this

24   would help his client.

25       The state district court in a hearing on various motions ruled that the State could

26   introduce portions of Holden's alleged journal entries even <u>without Holden testifying</u>.

27       Trial counsel compounded his ineffectiveness when he continued to encourage

28   Holden to testify, and he did, even though the State rested its case without admitting

16

1   the highly incriminating and confessional journal entries.  This alleged tactical decision

2   opened the door for the State to introduce the "horrific" journal entries (pgs. 20 & 21).

3        Once Holden was placed on the stand to testify, this "tactical strategy" opened

4   the door to allow the State to bring in not only Holden's prior convictions, but the

5   highly prejudicial and incriminating journal entries.

6        If trial counsel wanted to portray to the jury that Holden's confession was false,

7   trial counsel could have accomplished this strategical decision through cross

8   examination of the eye witness, Peña, that her testimony was suspect and inconsistent,

9   and that she was also afraid for herself of the co-conspirator, Salas.  Had trial counsel

10  asked the right questions of Peña under cross examination, the jury would have

11  determined that Holden confessed because he, too, was afraid for his family.

12       The damage from the testimony of Holden regarding his prior convictions,

13  including murder, and the journal far outweighed any benefit which trial counsel

14  would hope to be garnered from Holden's testimony.

15  **B.**    **<u>Trial counsel was ineffective in handling prior the conviction issue and</u>**
    **<u>burdened Holden's right to appear before the jury as an innocent man</u>**. (pg. 23)

16

17       In the rebuttal stage of Holden's trial, the State introduced a forensic handwriting

18  expert to testify regarding the handwriting in the journal.  This expert testified to the

19  authenticity of the handwriting being Holden's and that he acquired the handwriting

20  exemplar while Holden was being held in the Clark County Detention Center (pg. 24).

21       This reference by the expert to Holden's custodial status violated Holden's due

22  process right. <u>Kennedy v. Cardwell</u>, 487 F.2d 101, 104 (6th Cir. 1973), recognizing that

23  the presumption of innocence and constitutional due process requires that "every

24  defendant is entitled to be brought before the court with the appearance of dignity and

25  self-respect of a free and innocent man" (quoting <u>Eaddy v. People</u>, 174 P.2d 717, 718-19

26  (Col. 1946); <u>Witherow v. State</u>, 104 Nev. 721, 724; 765 P.2d 1153, 1155 (1988)).  Trial

27  counsel failed to object at this point, though he did raise the issue during a recess and

28  moved for a mistrial.  The trial court denied trial counsel's motion.

The expert's testimony was prejudicial and Defense Counsel had already revealed, or allowed to be revealed, Holden's custodial status and thereby denied him the right to be tried in the manner of a man presumed to be innocent.

**C.**     **Trial counsel was ineffective in failing to request a limiting instruction prior to introduction of the journal's other bad act evidence and appellate counsel was ineffective in failing to properly raise the issue that the district court erred in admitting the bad act evidence**.  (pg. 25)

The state district court admitted journal entries into evidence where Holden boasted of having acted as an enforcer on multiple drug deals.  The state district court's decision was made in error and prejudiced Holden.

As the Nevada Supreme Court determined in Ledbetter v. State, 122 Nev. 252, 259; 129 P.3d 671, 677:

> "A presumption of inadmissibility attaches to all prior bad act evidence." The principal concern with admitting this type of evidence is that the jury will be unduly influenced by it and convict a defendant simply because he is a bad person.  The presumption of inadmissibility may be rebutted when prior to the admission of this evidence the district court conducts a hearing outside the presence of the jury and finds that the following three factors set forth in *Tinch v. State* are satisfied: the evidence is relevant, it is clear and convincing, and its probative value is not substantially outweighed by the danger of unfair prejudice.  Although a hearing is required, the failure to hold a proper hearing below and make the necessary findings will not mandate reversal on appeal if "`(1) the record is sufficient for this court to determine that the evidence is admissible under the test for admissibility of prior bad act evidence ...; or (2) where the result would have been the same if the trial court had not admitted the evidence."

The journal entries also did not satisfy the factors in Tinch v. State, 113 Nev. 1170; 946 P.2d 1061.  Neither entry was relevant to whether Holden shot the victim, and neither entry was clear and convincing.  The meager probative value was clearly outweighed by the prejudice to Holden.  After objecting to the admission of these journal entries at trial, Trial Counsel failed to raise this issue on direct appeal (pg. 26).

Holden was not only prejudice by the admission of these journal entries, but also by trial counsel's failure to raise the issue on direct appeal.

///

///

18

**D.    Trial counsel was ineffective in conceding his client's possible guilt during jury selection and again during closing argument**.   (pg. 26)

It is fundamental to our criminal justice system that all defendants are innocent until proven guilty.  Trial counsel stripped Holden of this very foundation of our system in his voir dire and at closing argument.

In voir dire, trial counsel sowed the seeds of Holden's guilt in the minds of the jurors by stating as follows (pg. 27):

"And if I–if my conclusion at trial is I came up to you and say, hey, you know what?  Maybe my client is guilty.  Maybe he is.  But they haven't proven it beyond a reasonable doubt.  I have to feel comfortable with the jury because that's the law, and I want to make sure that you feel comfortable with yourself as a juror as well."

The strategy of trial counsel in making these statements to the jurors was highly prejudicial to Holden and not sound defense strategy.

The Nevada Supreme Court has recognized that an attorney cannot deprive his or her client of the right to have the issue of guilt or innocence presented to the jury as an adversarial issue on which the state bears the burden of proof without committing ineffective assistance of counsel.  Jones v. State, 110 Nev. 730; 877 P.2d 1052 (1994).

In closing, trial counsel reiterated his previous point about Holden (pg. 28):

"Now, I'm not–please don't get me wrong.  I'm not saying that–he's a good guy or that what he did was anything positive about this situation at all.  I'm not wanting to suggest anything positive about this situation at all.  I'm not wanting to suggest anything to the such.  I just want you to know what the law is."

To argue his own client was not a "good guy" is also not an acceptable defense strategy.  Such a statement jeopardizes Holden's credibility before the jurors and also communicated to the jurors that Defense Counsel did not believe his own client was innocent.  Defense Counsel was ineffective by denying Holden his presumption of innocence and demeaning his character.

///

///

///

**E.**   **Trial counsel was ineffective in failing to request instructions consistent with his theory of the defense and in failing to object during the State's closing argument when the State mischaracterized the law and thereby confused the meaning of the jury instructions and lessened the burden of proof required to convict, and appellate counsel was ineffective for failing to raise the issue of the State's improper argument on appeal.**   (pg2. 28-29)

At the May 11, 2006 hearing, the parties agreed to jury instructions and the State filed its Second Amended Information.  This Second Amended Information did not allege a second-degree felony murder theory, but only alleged a first-degree felony murder theory of a killing committed during a burglary.

During its closing argument, the State argued a theory of felony murder based on extortionate collection of a debt.  This would be a felonious act for second degree murder.  There is nothing in the Second Amended Information giving notice that the State would be seeking a second-degree felony murder conviction.

The State further confused the issue by arguing "The fact of the matter is if you go to collect a debt with that gun and somebody dies, you're on the hook for first degree murder."  Trial counsel did not object to this argument.

An extortionate collection of a debt is not an enumerated felony under NRS 200.030(1)(b); a murder committed during an extortion would be a second-degree felony murder.  The State did not allege this in its pleadings.  Adding an additional theory of felony murder in the close of the case violates the 6th Amendment and NRS 173.075(1).  Jennings v. State, 116 Nev. 488, 490; 998 P.2d 557, 559 (2000).

The State's argument that a killing in the act of an unenumerated felony amounts to first-degree murder is a blatant misstatement of the law.  This impermissible argument distorted the meaning of the jury instructions, lessened the State's burden of proof, and invited the jury to convict Holden of first-degree murder under an illegal theory; a second degree murder theory (pg. 30).

The prosecution also argued during its closing that "If Smokey did it and there's evidence [Holden] conspired with Smokey, he's guilty."  Trial counsel did not object to this improper argument (pg. 31).

1    If Defense Counsel's theory of the case was that Holden was merely present,

2    Defense Counsel failed to request instructions on unarmed/vicarious co-conspirator

3    liability and aiding and abetting which would have made clear what the State's burden

4    was with respect to intent.

5    Pursuant to <u>Sharma v. State</u>, 118 Nev. 648; 56 P.3d 868 (2002), one cannot be held

6    liable for the specific intent crime of another under an aiding and abetting theory,

7    without proof that he intended to aid the other in the commission of the crime charged.

8    Thus if Holden only conspired with "Smokey" to collect a debt and not to commit

9    murder, Holden was not guilty of first-degree murder contrary to representations made

10   by the State (pg. 31).

11   The instruction on co-conspirator liability was deficient and confusing.

12   Instruction 21 stated, in part "[e]very coconspirator is legally responsible for an act of a

13   co-conspirator that follows as one of the probable and natural consequences of the

14   object of the conspiracy so long as it is well established that the defendant had the

15   specific intent that the crime occur."  This instruction does not clearly set out that the

16   crime intended must be the crime for which guilt is being considered.  A jury reading

17   this instruction and also considering the State's argument could believe that so long as

18   Holden conspired with the other suspects and specifically intended to commit any

19   crime, i.e., an extortionate collection of a debt, then he is liable for his coconspirator's act

20   of killing the Deceased, even if he did not intend the killing (pg. 32).

21   Instruction 25, the use of a deadly weapon, did not define "use" liability for an

22   unarmed coconspirator.  In <u>Brooks v. State</u>, 124 Nev. 203; 180 P.3d 657 (2008), the

23   Nevada Supreme Court held that whether an unarmed offender is subject to the deadly

24   weapon enhancement depends upon whether the unarmed offender intended the use of

25   the deadly weapon.  The jury was not instructed on the important element of intent.

26   Defense Counsel's theory was that although Holden possessed the gun for the purpose

27   of sale, he did not "use" it and when it was "used" by the third suspect to shoot the

28   Deceased, Holden did not intend this "use."  It was ineffective assistance of counsel to

21

1  fail to request an instruction defining unarmed co-conspirator liability for "use of a

2  deadly weapon" given Defense Counsel's theory of the case (pg. 32).  Defense Counsel's

3  failures as noted above could not have been based on any reasonable strategy and

4  undermined confidence in the verdict.

5      Also, Appellate Counsel failed to raise the issue of the prosecutor's improper

6  argument on appeal.  Even though the issue was not preserved, it is so egregious as to

7  rise to the level of plain  error, and this type of error is grounds for reversal.  It cannot

8  be determined beyond a reasonable doubt that the jury would have convicted Holden

9  of first-degree murder absent the State's confusing argument and the deficient

10  instructions.  <u>Cortinas v. State</u>, 124 Nev. 1013; 195 P.3d 315 (2008) (setting forth

11  standards of harmless error review where verdict might rest on invalid theory on

12  liability) (pg. 33).

13  **F.**   **Appellate counsel was ineffective in raising the issue of inadmissible hearsay**
        **being admitted against Holden in violation of _Bruton_ and the 6th Amendment**.
14      (pg. 33)

15      Amy Hatzenpillar was permitted to testify, over the objection of Defense

16  Counsel, that when Salas and Holden returned to the apartment on the day of the

17  incident, Salas said that "they took care of what they had to take care of," though

18  Hatzenpillar was not sure if Holden was present at the time of the statement.

19      This statement was not admissible as non-hearsay under the requirements for co-

20  conspirator statements or adoptive admissions.  See NRS 50.035(b)(e).  The admission of

21  this statement into evidence violated Holden's 6th Amendment right to confront and

22  cross-examine witnesses.

23      In <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620 (1968), the U.S. Supreme

24  Court held that a defendant's right of cross-examination, which is secured by the

25  Confrontation Clause of the 6th Amendment, is violated when a court admits a non-

26  testifying co-defendant's statement inculpating the defendant, notwithstanding jury

27  instructions and the co-defendant's confession must be disregarded in determining the

28  defendant's guilt.  <u>Id</u>. at 1225, 88 S.Ct. at 1822 (pg. 34).

1    In Cruz v. New York, 481 U.S. 186, 192-93; 107 S.Ct. 1714, 1717-18 (1987), the

2    court held that where a non-testifying co-defendant's statement incriminating the

3    defendant is not directly admissible against the defendant, the Confrontation Clause

4    bars its admission even if the jury is instructed not to consider it against the defendant,

5    and even if the defendant's own interlocking confession is admitted against him (pg.

6    34).

7    The admission of Salas' statement violated Holden's 6th Amendment right as it

8    implicates Holden in having "taken care of something" with Salas at the time of the

9    homicide.  This issue was preserved for appeal, but Appellate Counsel did not raise this

10   issue on direct appeal.

11   **G.    Trial counsel was ineffective for failing to object to prosecutorial misconduct**
     **during closing arguments, and appellate counsel was ineffective for failing to**

12   **raise the issue of prosecutorial misconduct on appeal**.  (pg. 35)

13   Defense Counsel failed to act when the prosecutor misstated the law as stated in

14   Section F hereinabove, as well as when the State argued that Holden no longer had a

15   presumption of innocence, it was misstating a fundamental component of criminal and

16   constitutional law that was prejudicial to Holden's case and to which Defense Counsel

17   failed to object.

18   The State further called Holden a liar and mocked the defense's theory of the

19   case.  The State argued that "[Being blindfolded] that's the only way that you would be

20   able to follow the story that the defendant has told you."  The prosecutor even resorted

21   to invoking God, "But the truth of the matter is, take away his confession, take away his

22   journal, take away everything.  Reject his testimony as a whole because God knows you

23   couldn't believe him on the stand so you can't believe what he told the police."  Trial

24   counsel failed to object to these statements, and appellate counsel failed to raise this

25   issue on direct appeal (pg. 36).

26   Disparagement of the defense constitutes misconduct which deprives a

27   defendant of his due process right to a fair trial.  Butler v. State, 120 Nev. 879, 898; 102

28   P.3d 71, 84 (2004).  In Witherow v. State, 104 Nev. 721, 724; 765 P.2d 1153, 1155 (1988),

23

the Nevada Supreme Court held that characterization of a witness' testimony as a lie is improper and "amounts to an opinion as to the veracity of a witness in circumstances where veracity might well have determined the ultimate issue of guilt or innocence..." (pg. 36).

Similarly, in <u>Ross v. State</u>, 106 Nev. 924; 803 P.2d 1104 (1990), the prosecutor argued during closing that a defense witness was lying to protect her husband, the defendant.  Upon review, the Nevada Supreme Court held that the error was plain and required reversal (pg. 37).

It is the jury's function to determine guilt or innocence.  Absent these errors, it cannot be said with sufficient confidence that the jury would have reached the same verdict.  <u>Id</u>. at 928; 803 P.2d 1106 (footnote omitted) (emphasis added).

The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  <u>Darden v. Wainwright</u>, 477 U.S. 168; 106 S.Ct. 2464 (1986).  Here, the prosecutors unfairly undermined the defense by misstating law, portraying Holden as a liar, and declaring that the defense's theory was incredible, while they spoke from their positions as representatives from the State.  Further, they called down the omniscience of God as additional authority (pg. 38).

Defense Counsel failed to object and thereby prejudiced Holden by not preserving these arguments for appeal.  Even though he did not preserve these arguments at trial, Appellate Counsel should have raised the issue of prosecutorial misconduct on appeal, because even under a plain error standard, a different outcome on appeal would have been likely when considering all of the evidence.

**H.** **Trial counsel was ineffective in failing to prepare for trial by investigating and fully raising the issue of whether Holden's statement to the police should be suppressed for a *Miranda* violation, and appellate counsel was ineffective for failing to raise the issue on appeal**.   (pg. 38)

Defense Counsel did not review the videotape of Holden's statement until the weekend before trial when he met with Holden to review the videotape.   Because

1   Defense Counsel waited so long to review the videotape, he did not file a motion to

2   suppress Holden's statement on that ground.  Defense Counsel moved to suppress

3   Holden's statement mid-trial.  Had Defense Counsel properly considered suppression

4   issues, he would have been able to timely file and brief a suppression motion based on a

5   Miranda violation.

6         During trial, the court conducted a short hearing on the voluntariness of the

7   waiver, and determined that the waiver of *Miranda* at the time of the North Las Vegas

8   interview because Holden stating that he did not want to speak with Metro officers, did

9   not invoke *Miranda* and he subsequently waived his rights when he was questioned by

10  North Las Vegas officers.

11        However, the trial court applied the wrong standard at the suppression hearing.

12  Holden had been arrested and when officers attempted a custodial interrogation,

13  Holden stated he did not want to talk to them; invoking his 5th Amendment right to

14  remain silent.  The test is whether his stated wish not to speak with police was

15  scrupulously honored.  Dewey v. State, 123 Nev. 483, 490-501; 169 P.3d 1149, 1154

16  (2001).  The Dewey court adopted the flexible approach from United States v. Hsu, 852

17  F.2d 407(9th Cir. 1988) for the application of the four factor totality of the circumstances

18  test of Michigan v. Mosley, 423 U.S. 96; 96 S.Ct. 321 (1975).  These factors are whether

19  the police immediately ceased questioning once the suspect indicated his desire to

20  remain silent, whether the police resumed questioning only after a passage of a

21  significant amount of time (in the case of Mosley, two hours), whether a new set of

22  *Miranda* warnings were given, and whether the focus was on a different crime.  In Hsu,

23  the 9th Circuit focused on whether the subsequent waiver was valid and whether a new

24  set of warnings had been issued. 852 F.2d 407, 410 (9th Cir. 1988) (pg. 40).

25        The passage of time factor for Holden was so much less – only a few minutes –

26  and not the two hour passage of time in the Mosley decision.  This fact is also significant

27  to the consideration of the voluntariness of Holden's statement.  As Holden states in the

28  transcript, he had severe stomach pains on the night of his arrest; the stress of the arrest

1   coupled with being asked in rapid succession whether he wished to speak to the police

2   overwhelmed his judgment.  As such, Holden's statement was not a confession to the

3   crime the police were investigating, but a submission provoked by pain, fear, and

4   weariness (pg. 41).

5       Appellate counsel should have preserved this issue for appeal.  Holden's

6   statement was highly prejudicial and most likely formed the basis for his conviction.

7   **I.    Counsel was ineffective in failing to present expert and lay testimony to
        challenge the reliability of Holden's statements made during the police
8       investigation.**   (pg. 41)

9       Defense Counsel attempted to use a professor from the University of Nevada,

10  Reno as his expert witness on the existence of false confessions.  Because Defense

11  Counsel filed his notice of expert witness at the last moment, on April 17, 2006, the court

12  held a hearing outside of the presence of the jury during trial.  During this hearing, Dr.

13  Davis informed the prosecution that she had not reviewed the entire video of Holden's

14  confession because trial counsel had to leave Reno and he took the video with him and

15  had never met with Holden.  The court ruled that Dr. Davis would not be allowed to

16  testify.  The court granted the State's motion in limine (pg. 42).

17      Appellate Counsel raised this issue on direct appeal, but the Nevada Supreme

18  Court ruled that there was no error because whether Holden might have falsely

19  confessed to protect his family was not an area of specific inquiry.

20      Defense Counsel's advice to Holden to testify was made and based om Defense

21  Counsel's erroneous belief that his expert would be able to testify and support Holden's

22  testimony.

23      Defense Counsel should have obtained an expert witness to testify to whether or

24  not Holden's interrogation responses may have been affected by Holden's

25  methamphetamine use combined with his unhealthy physical condition.  Defense

26  Counsel had evidence (apart from Holden's testimony) to show that he had used

27  methamphetamine prior to his interview with the police (pg. 43).

28  ///

1    Methamphetamine use is known to cause paranoia.  (See e.g. American

2    Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders xxxiii (4th

3    ed. text rev. 2000) (DSM-IV-TR) Secs. 292.89, 304.4, 305.70; Delozier v. Sirmons, 531 F.3d

4    1306, 1318 (10th Cir. 2008); Sebastion v. Astrue, 138 Soc. Serv. Rep. 545 n.6 (ED Cal. 2009)

5    (pg. 43).

6    The interrogation transcript and testimony reflects that Holden's statement was

7    given about 1:30 a.m., with an upset stomach and an abscessed and painful molar/dry

8    socket.

9    Det. Morgan testified that he had no indication that Holden was under the

10   influence of intoxicating substances, though the transcript of the interrogation reflects

11   that when officers asked about the drug use, an unclear answer was given, and the

12   detective then told Holden that it did not really matter whether "it" was out of his

13   system.

14   During cross examination of Det. Morgan, Defense Counsel failed to ask any

15   questions regarding this statement.  Also, an expert should have been retained by trial

16   counsel to testify to the effects of Holden's condition on his interrogation.  At trial,

17   Defense Counsel also failed to address the discrepancies between Holden's "confession"

18   to police and Peña's description of the events, failed to attempt to impeach Peña's

19   credibility by introducing other evidence that she was being less than truthful because

20   of her fear of Salas.  The fact that Peña was inconsistent regarding the presence of a

21   third person in the room at the time of the shooting, supports an argument that she was

22   afraid of that person and tailored her testimony accordingly.  This argument also

23   supports Holden's fear induced a false statement (pgs. 44-45).

24   Defense Counsel also failed to present other available evidence showing a

25   reasonable basis for Holden's fear, and Defense Counsel should have presented

26   evidence that Holden had a wife and child.

27   Defense Counsel's ineffectiveness to adequately investigate the defense and

28   prepare for trial warrants relief.  Warner v. State, 102 Nev. 635; 729 P.2d 1359 (1986)

(granting a new trial where counsel's failure to investigate and prepare for trial left the

defendant with no defense at trial) (pg. 46).

**J.**     **The combined derelictions of trial and appellate counsel warrant relief**.   (pg. 46)

The cumulative effect of the instances of ineffective assistance of counsel alleged

herein warrant relief.  McConnell v. State, 125 Nev. 243, 246; 212 P.3d 307, 313 (2009)

(assuming, without deciding, that cumulative instances of ineffective counsel may be

grounds for relief) (pg. 47).

This Court should consider how, by and large, trial counsel's errors worked

together to deny Holden his right to due process:

A.     Trial counsel failed to properly challenge the *Miranda* violation which
allowed Holden's statement to be used against him.

B      Trial counsel created a bias against Holden amongst the jurors during voir
dire by both conceding Holden's guilt and admitting that Holden had
prior felony convictions.  This likely turned the jury against Holden before
any testimony was given.

C.     Trial counsel further prejudiced Holden by advising him to take the stand
which allowed Holden's prior convictions and the heinous journal entries
to become admitted by the State.

D.     By the time the State's handwriting expert took the stand, Holden's prior
convictions were so well established that the state district court could not
find prejudice in the expert revealing Holden's custodial status.

All of the above instances of misconduct stripped Holden of any presumption of

innocence and left him vulnerable to the State's use of prior bad act evidence.

E.     Trial counsel provided no expert to support Holden's claim that his
confession was not trustworthy.

F.     Defense counsel did not proffer supporting jury instructions in line with
his theory.

In total, defense counsel was not merely ineffective, but a liability as well.

The above claims of ineffective assistance of counsel in Sections III and IV,

Grounds for Relief  - Direct Appeal and Grounds for Relief - Post-Conviction Appeal,

were presented on behalf of Holden by Appointed Counsel in both Holden's direct

appeal and appeal of the decision denying Holden's first state petition for writ of

1    habeas corpus.  Therefore, all of the above claims have been exhausted in state court.

2                                                    IV.

3                                        PRAYER FOR RELIEF

4        1.    Issue a writ of habeas corpus to have Holden brought before this Court so

5    that he may be discharged from his unconstitutional confinement;

6        2.    Conduct a hearing at which proof may be offered concerning the

7    allegations in this first amended petition and any defenses that may be raised by

8    Respondents; and

9        3.    Grant such other and further relief as, in the interests of justice, may be

10   appropriate.

11

12   Dated: October 29, 2014                    s/
                                           _____
                                           JEFFREY S. BLANCK, ESQ.,
13                                         CJA Counsel for Petitioner

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2        Pursuant to FRCP 5(b), I certify that on the 29th day of October, 2014, I am an

3  employee of the LAW OFFICE OF JEFFREY S. BLANCK, and that on this day, I caused

4  to be served a true and correct copy of the **FIRST AMENDED PETITION FOR WRIT**

5  **OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY PURSUANT TO 28**

6  **U.S.C. §2254** by:

7      ☐     U.S. Mail
         ☐     Facsimile Transmission
8      ☐     Personal Service
         ☐     Hand Delivery
9      ☐     Messenger Service
         ☒     CM/ECF Electronic Service
10    ☐     Electronic Mail

11  addressed to the following:

12

Catherine Cortez-Masto
13  Nevada Attorney General's Office
100 N. Carson Street
14  Suite 3900
Carson City, Nevada 89701-4717
15  Email: usdcfilings@ag.nv.gov

16  Michael Bongard
Office of Attorney General
17  1539 Avenue F
Suite 2
18  Ely, Nevada 89301
Email: mbongard@ag.nv.gov

19

20                               /s _____
                               GALE SANDERS

21

22

23

24

25

26

27

28